HUNTER (ALLEN v.). See Case No. 225.

HUNTER (BOWIE v.). See Case No. 1,731.

HUNTER (COOK v.). See Case No. 3,161.

HUNTER (COURTNEY v.). See Case No. 3,285.

HUNTER (FOY v.). See Cases Nos. 5,017–5,019.

HUNTER (FRASER v.). See Case No. 5,063.

## Case No. 6,905.

### HUNTER v. The HANNAH.

[Bee, 154.][1]

District Court, D. South Carolina. June, 1800.

CARGO—SURRENDER TO WAR VESSEL—COMPENSATION.

Compensation due for money surrendered to prevent the capture or burning of a vessel and her cargo.

BEE, District Judge. This suit is instituted by Thomas Hunter, to recover the sum of 950 dollars shipped on board the Hannah, and for which a bill of lading was signed at Tortola, on the 7th of May last, by Killeran, the master. The bill of lading specifies that the said 950 dollars were shipped by John Collins, and consigned to the actor in this cause. From the pleadings and evidence it appears that, on the 17th of May last, the Hannah was captured by a French privateer, who took on board the captain and crew of the brig, and put her under the charge of a

[1] [Reported by Hon. Thomas Bee, District Judge.]

prizemaster. That the captors, after examining the cargo, were particularly anxious to discover if there was money on board. During the search, the prizemaster, who was very busy in it, caused several articles to be taken from the brig, and put into the boat alongside. Some time elapsed before money was discovered; and at length, as appears from the testimony of Mr. Collins, a conversation took place between the prizemaster and Collins, in which the former consented to give up the brig upon receiving a bill for one thousand dollars, made payable in a neutral port. But when it was found that there was money on board, the Frenchman, in a violent passion, reopened all the trunks, ripped up part of the ceiling, and threatened to burn the brig and make prisoners of her crew, unless they discovered where this money was concealed. This is partly confirmed by the evidence of Blake, who says, the men were ordered on board the privateer, and had their clothes with them. The mate, too, says that all the men were taken out. After some time, the captain of the privateer went on board the prize, carrying with him Killeran, her captain. That he found there fuel prepared in the cabin by the French sailors, who said they would set fire to the brig, unless the money was given up. This induced Killeran to deliver it to the prizemaster, who returned the articles that had been put into the boat, and suffered the vessel to proceed on her voyage. Much time was taken up in an endeavour to ascertain to whom the money belonged; whether to Hunter or Collins. It was also suggested that a leaf of the log-book containing the original entries had been torn out, and other entries substituted. As to the first point, the bill of lading is, in my opinion, conclusive; and the evidence of the mate satisfies me respecting the other. No higher evidence could be offered under the respective circumstances.

The only question necessary for investigation is, whether the delivery of this money was the inducement with the captors to discharge the brig, and permit her to proceed on her voyage: and whether, if the money had not been produced, they would have burnt their prize, or carried her into port. It was admitted on both sides, that whenever the sacrifice of part of a cargo produces the safety of the remainder, and of the vessel, contribution must be made by the property saved, as a just compensation for what is lost. How does this law apply to the circumstances of this case? There has been great contrariety of evidence, and it has been well set forth by the advocates on both sides. It will be necessary for me to state such facts as appear to me to have been proved, and I must draw my inferences accordingly. It is in proof: (1) That 950 dollars were shipped on board this brig, at a freight of one per cent. (2) That the brig was captured on the high seas by a French privateer, by which, according to their present mode of proceeding, she

might have been carried into port and condemned. (3) That the vessel and cargo were worth upwards of nine thousand dollars, exclusively of this specie. (4) That, upon producing this specie, the captured vessel was suffered to proceed on her voyage. I cannot, therefore, doubt that the money occasioned the safety of the vessel, and of the remainder of the cargo. Whether they would have burnt the brig may be questioned; but they certainly would have carried her into port; and when once there, it is not probable they would have given up the whole, except the money.

In the present case, the captain discovered and delivered up the money so anxiously sought for. He declares, in his answer, that when he returned on board his vessel, from the privateer, he found the Frenchmen prepared with fuel in the cabin, to burn the brig. In consequence of their threats he discovered, and gave up the specie; and this in presence of Collins, the shipper. Collins swears that he and the captain had previously conversed together, and that he acquiesced in the surrender of the money, because the captain promised the reimbursement of it as soon as they should arrive in Charleston. All this appears probable and natural. Captain Killeran does, indeed, afterwards declare that he gave up the money as the property of Collins, and not as a ransom of the vessel and cargo. I do not see that this ought to avail. He had no right to deliver a part of his cargo, for which he had signed a bill of lading, except for the purpose of saving the remainder. He does not pretend that Collins consented to his doing so; nor is it probable that Collins would have acquiesced upon any other than the terms he states, viz. reimbursement.

I have carefully considered this case, and am decidedly of opinion that the libellant is entitled to compensation and reimbursement of the 950 dollars, delivered up by him, upon the stipulation set forth; I decree accordingly.